313 So.2d 799 (1975)
STATE of Louisiana
v.
Arthur Ray GYLES.
No. 55559.
Supreme Court of Louisiana.
May 29, 1975.
R. Perry Pringle, Johnston, Thornton, Pringle & Greer, Shreveport, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Lawrence M. Johnson, Asst. Dist. Atty., for plaintiff-respondent.
William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, First Asst. Atty. Gen., Walter L. Smith, Jr., Asst. Atty. Gen., L. J. Hymel, Jr., Baton Rouge, Special Counsel, Louis M. Jones, Asst. Atty. Gen., for amicus curiae.
BARHAM, Justice.
The defendant, Arthur Ray Gyles, is charged with the murder of an unnamed male child, a violation of La.R.S. 14:30.1. By appropriate pleadings, the particulars of the charge, as admitted by the State, are as follows. The defendant struck a pregnant woman with a stick and with his fist at about 2:30 A.M. on September 20, 1974. A short time later, she commenced hemorrhaging and was taken to the hospital. At about 10:20 A.M., approximately eight hours after the beating, a male child was stillborn. At the time of the beating, the woman was eight months pregnant. We granted certiorari to determine whether inflicting injury upon a pregnant woman which causes a miscarriage or a stillbirth constitutes the statutory crime of murder proscribed by La.R.S. 14:30.1 because the fetus is not born alive. 305 So.2d 124 (La.1974).
*800 The question is simply one of statutory construction: did the legislature, when it defined and provided the punishment for the crime of murder, intend to include within the crime the conduct with which the defendant is charged?[1]
The defendant is charged with second degree murder under La.R.S. 14:30.1. As applicable to the present facts, the crime is defined as "* * * the killing of a human being: (1) [w]hen the offender has a specific intent to kill or to inflict great bodily harm * * *."[2] La.R.S. 14:30.1 is a 1973 re-enactment of the statutory definition of murder provided by Article 30 of the Criminal Code of 1941 (Act No. 43 of 1942), La.R.S. 14:30 (1950).[3] The 1942 statute codified the substantive criminal law of Louisiana. The Louisiana legislature had never previously defined "murder" and many other crimes. Rather, it had provided the punishment for murder, rape, arson, robbery, burglary, larceny and other crimes. See Acts Passed at the First Session of the Legislative Council of the Territory of Orleans, Chap. L at 416 (1805), approved May 4, 1805, and successor acts which had expressly provided in Section 33: "All the crimes, offences [sic] and misdemeanors herein before, shall be taken, intended and construed, according to and in conformity with the common law of England * * *."
The express statutory recognition that the definition of the crime of murder (as well as of other crimes) was to be found in the common law of England continued for the next one hundred and thirty-seven years, until for the first time the legislature itself defined the crime by Article 30 of the Criminal Code of 1942, as above cited and as found in the murder statute under which the present prosecution is brought. See Dart's Louisiana Code of Criminal Procedure and Criminal Statutes, § 600 (1932); Revised Statutes of 1870, § 976; Act 121 of 1855, § 73; Acts Passed at the Second Session of the Legislative Council of the Territory of Orleans, Chap. IV, § 3 at 36-38 (1805). See also State v. Robinson, 143 La. 543, 78 So. 933 (1918); State v. Mullen, 14 La.Ann. 570 (1859).
The 1942 codification retained the common law concept of the crime of murder, as defined by the common law and jurisprudence since 1905. Act 43 of 1942, Article 30, Official Revision Comment and decisions cited therein; Bennett, The Louisiana Criminal Code: A Comparison with Prior Louisiana Criminal Law, 5 La.L.Rev. 6, 22-24 (1942). The common law defined the crime of murder as the felonious "killing of a human being." See 40 C.J.S. Homicide § 1, p. 823, 40 Am.Jur.2d 300, Homicide, § 8, and the other treatises and decisions cited Infra. That definition was thus retained in the 1942 codification, which is the verbatim source of the present murder statute as quoted supra.
The common law crime of murder, which proscribes the killing of a "human being," contemplates only the killing of those human beings who have been born alive and who thus have an existence independent *801 of their mothers at the time of their death. The crime does not punish conduct which causes the death of a fetus not born alive due to an assault on the mother, in the absence of a statute expressly changing the common law definition of the crime. The uniform authority in all American jurisdictions is to this effect. See W. LaFave and A. Scott, Handbook on Criminal Law, § 67, at 530-32 (1972); W. Clark and W. Marshall, A Treatise on the Law of Crimes, § 10.00 (6th ed., Wingersky ed., 1958); 1 Wharton's Criminal Law and Procedure, § 189 (Anderson ed., 1957); 2 W. Burdick, The Law of Crime, § 445 (1946); Meldman, Legal Concepts of Human Life: The Infanticide Doctrines, 52 Marquette L.Rev. 105 (1968); Annot., HomicideUnborn Child, 40 A.L.R.3d 444 (1971); Annot., InfanticideCorpus Delicti, 159 A.L.R. 523 (1945).[4] These authorities cite decisions from over twenty American jurisdictions to this effect, with none to the contrary.[5] The State does not cite any opposing authority, and we have found none.
Thus, under the uniform American and common law jurisprudence, the defendant's conduct of striking the pregnant woman and causing the stillbirth of the child is not punishable as a "murder" under the definition of that crime in the Louisiana statutes and those of other jurisdictions. As earlier noted, however, the alleged conduct is punishable as a felony in Louisiana under another criminal statute. See Footnote 1, supra. The authorities also note that by express statutory enactment in several states the conduct is punishable as a degree of murder or as a specific crime of feticide, where the death of an unborn but viable child (the fetus) results from injuries inflicted upon a pregnant woman under such circumstances that the assailant would be guilty of murder had the mother died instead of the unborn child.[6] Louisiana has no such statute. While these authorities recognize that the unborn child is considered a person in many instances, such as for inheritance or wrongful death recovery in a tort suit, nevertheless, an act against a pregnant woman which prevents the fetus from being born alive is simply not conduct proscribed by the legal definition of the crime of murder, in the absence of express statute so providing.
Despite this uniform authority to the contrary, the State nevertheless suggests that this Court should extend the definition of the murder statute so as to include as punishable by it the criminal conduct alleged in this case. By all historic, traditional, and express concepts of our legal system, this Court cannot do so. In the first place, this Court cannot create a crime; only the legislature may. La.R.S. 14:7. In the second place, the articles of *802 the Criminal Code expressly "* * * cannot be extended by analogy so as to create crimes not provided for herein; * * *." La.R.S. 14:3. Thus, a penal statute cannot be extended to cases not included within the clear and unmistakable import of its language, in the interpretation of which its legislative history and revision comments may be considered. See, e.g., State v. Truby, 211 La. 178, 29 So.2d 758 (1947). As the supreme court of a sister state recently declared, in refusing to accede to a similar argument by the state prosecutorial authorities:
"* * * For a court to simply declare, by judicial fiat, that the time has now come to prosecute under section 187 [punishing the crime of `murder'] one who kills an unborn but viable fetus would indeed be to rewrite the statute under the guise of construing it. Nor does a need to fill an asserted `gap' in the law between abortion and homicide. . . justify judicial legislation of this nature: to make it `a judicial function "to explore such new fields of crime as they may appear from time to time" is wholly foreign to the American concept of criminal justice' and `raises very serious questions concerning the principle of separation of powers.' * * *" Keeler v. Superior Court, 470 P.2d 617, 625-26 (1970).
We reiterate that the narrow question before us is whether the crime of "murder," as defined by the Louisiana legislature, also proscribes conduct which causes an unborn child to be born dead. In accord with the uniform and undisputed authority, we hold that, until the legislature provides otherwise, the crime of "murder" enacted by our legislature does not proscribe such conduct. Our decision does not at all question the undoubted existence of the unborn child for civil purposes. La.C.C. arts. 28, 29, 954-57. Nor does it question the constitutional power of the State to punish conduct which causes the death of an unborn child in a pregnant woman as long as it exercises that power in accordance with the dictates of Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).
For the reasons assigned, the judgment of the district court is reversed, and we sustain the defendant's motion to quash the indictment charging him with murder. The prosecution for this crime is dismissed.
Reversed and dismissed.
SUMMERS, J., dissents and will assign reasons.
CALOGERO, J., additionally, assigns concurring reasons.
CALOGERO, Justice (concurring).
I am in full agreement with the majority's conclusion that the definition of murder, as it now appears in La.R.S. 14:30.1, was first codified in 1942 with the Legislative intent clearly to retain the common law concept of the crime of murder as that crime had been defined by the common law. Furthermore, I do not think it is appropriate for this Court to legislate judicially, by for instance, determining that the time has now come to rewrite the effect of the statute in the guise of construing it.
But for the foregoing, however, I would not hesitate to interpret the statute as proscribing the killing of an eight and one half month unborn fetus, for I believe that such an unborn child is indeed a human being. By appropriate amendment to the statute, evidencing a legislative intent different from that which I believe to have been the intent in passing the 1942 statute, the legislature may define and proscribe, as the crime of murder, the killing of an unborn, viable fetus.
SUMMERS, Justice (dissenting).
The statute defining second degree murder is clear and unambiguous. It recites that "Second degree murder is the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm; . . . ." La.R.S. 14:30.1.
*803 The facts of this case make it clear that the defendant intended to inflict great bodily harm. The sole question, then, is whether the child in the mother's womb at eight months of pregnancy is a human being.
I am of the opinion that the question must be answered in the affirmative and it cannot be avoided by saying the legislature did not intend that the statute defining second degree murder should apply to the facts of this case. To the contrary, I find it immeasurably more difficult to conclude that the legislature intended that such an offenseinvolving as it does the killing of a human being precisely as set forth in the statute on second degree murdershould only be punishable in Louisiana as a battery.
None of the authorities cited by the majority are binding on this Court, whereas the unequivocal language of the second degree murder statute is binding on this Court.
As in this case, "When the law is clear and free from ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit." La.Civil Code art. 13. This cardinal cannon of statutory construction has not been observed here. The Criminal Code declares that:
". . . in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provisions." La.R.S. 14:3.
I find it to be the purpose of this law to prevent the killing of human beings, and I find that a human being has been killed by this defendant contrary to that law.
I would uphold the trial judge's ruling denying the motion to quash this indictment.
NOTES
[1] It is not disputed that a battery committed with a dangerous weapon upon a pregnant woman is punishable as aggravated battery under La.R.S. 14:34 and that, if the beating was administered with intent to procure a premature delivery of the fetus, it is possibly subject to prosecution as an abortion under La.R.S. 14:87.
[2] A second paragraph provides that the crime is also committed if a human being is killed "(2) [w]hen the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill. * * *"
[3] By Acts 109 and 111 of 1973, former La.R.S. 14:30 (1950) was amended and re-enacted as La.R.S. 14:30 (1973) and La.R.S. 14:30.1 (1973), classifying murders according to the circumstances as first degree (a capital offense) or second degree (life imprisonment). The statutory definition quoted in the text of this opinion essentially retains the language of the original enactment.
[4] The English authorities are to the same effect. See, e.g., 3 Stephen, A History of the Criminal Law of England 2-3 (1883, reprinted 1973); 4 W. Blackstone, Commentaries on the Law of England, Chapter xiv, at 198 (1769); 3 E. Coke, Institutes of the Laws of England, Chapter vii, at 50-51 (1628); Winfield, The Unborn Child, 8 Camb.L.J. 76 (1944).
[5] See the following leading or representative cases: Keeler v. Superior Court, 2 Cal.3d 619, 87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420 (1970); Morgan v. State, 148 Tenn. 417, 256 S.W. 433 (1923); State v. Winthrop, 43 Iowa 519 (1876). See also: State v. Dickinson, 28 Ohio St.2d 65, 275 N.E.2d 599 (1971). People v. Chavez, 77 Cal.App.2d 621, 176 P.2d 92 (1947), sometimes cited as the only modification of the rule, was explained by the California Supreme Court in the later Keeler decision, cited supra, as limited to its facts which were that the child, which "in the process of being born" prematurely, had been killed when it was dropped from the mother's womb into the toilet bowl. 470 P.2d at 628.
[6] After the Keeler decision, cited in Footnote 5, the California legislature enacted a statute expresly including the death of a fetus under specified conditions, within the crime punishable as murder. 48 West's Annot.Calif.Codes § 187 (as amended by Stats.1970, c. 1311, p. 2440). Other feticide statutes include: 20 Mississippi Code 1972 Annot., Title 97-3-37; 24 Michigan Statutes Annot., § 28.555, M.C.L.A. § 750.323 (1972).