378 So.2d 916 (1979)
STATE of Louisiana
v.
Michael T. BROWN.
No. 64873.
Supreme Court of Louisiana.
December 13, 1979.
Rehearing Denied January 28, 1980.
Jerry Page Harmon, Crowley, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Jack Derrick Miller, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.[*]
Defendant and another killed Harriet St. Andre May 25, 1977. Defendant was indicted *917 for second degree murder of St. Andre, tried and convicted of manslaughter. We affirmed the conviction April 9, 1979, State v. Brown, 370 So.2d 525 (La.).
Defendant was also, in a separate indictment, charged with the "murder of a fertilized implanted fetus in the womb of Harriet St. Andre, in accordance with ... 14:2 and 14:30.1."
After the manslaughter conviction, and after the trial judge overruled a motion to quash the indictment for the killing of the fetus (the motion to quash was based on double jeopardy), defendant pleaded guilty to manslaughter of the fetus and was sentenced, apparently pursuant to a plea bargain. The trial judge had ruled that collateral estoppel precluded another trial for a crime greater than manslaughter, since the two offenses grew out of the same act of the defendant. The trial judge denied an out-of-time appeal; defendant applied here; we granted the writ, and on deciding the appeal from the manslaughter conviction for the killing of St. Andre, ordered an out-of-time appeal, State v. Brown, 370 So.2d 528 (La.1979).
We do not reach the double jeopardy issue because of error discoverable "by a mere inspection of the pleadings and proceedings." C.Cr.P. 920.
Homicide in Louisiana, in all its grades, results from "the killing of a human being." R.S. 14:29. The position of the state is that a 1977 amendment of the definition of "person" in the criminal code broadens homicide to include feticide. That definition formerly appeared in R.S. 14:2(7) as:
"(7) `Person' includes a body of persons, whether incorporated or not."
As amended in 1976, "person" is defined as follows:
"(7) `Person' includes a human being from the moment of fertilization and implantation and also includes a body of persons, whether incorporated or not."
In 1975 we held that the killing of a fetus was not murder. State v. Gyles, 313 So.2d 799 (La.). The defendant there was charged with the murder of an unborn fetus whose death had resulted from a beating of the pregnant woman. This Court held that when the legislature first defined murder in 1942 it intended to adopt the common law concept of that crime, which proscribes the killing of a human being. The court went on to reason that the crime of murder "contemplates only the killing of those human beings who have been born alive and who thus have an existence independent of their mothers at the time of their death. The crime does not punish conduct which causes the death of a fetus not born alive due to an assault on the mother, in the absence of a statute expressly changing the common law definition of [murder]." State v. Gyles, supra, at 800-801. The court held that without express legislative enactment, the murder statute cannot be extended to punish such conduct. The court stated that to hold otherwise would usurp the legislative function of defining what is criminal activity.
There followed the 1976 amendment of R.S. 14:2(7). The state maintains that this amendment was meant to redefine "human being" and thus implicitly amend R.S. 14:29 defining homicide. It is clearly within the legislature's constitutional power to redefine homicide to specifically include feticide, but to do so implicitly is prohibited. Homicide is not the killing of a "person," but is the killing of a "human being," R.S. 14:29, a phrase which has been restricted to those born alive throughout the United States in relation to the crime of murder. In 1978 the legislature amended and reenacted R.S. 14:29, the general homicide statute, to dispense with the time limitations on liability for homicide. Despite the opportunity to redefine homicide in accord with R.S. 14:2(7) to include feticide, it retained the language of the common law instead. Homicide remains the killing of a human being. Other jurisdictions that have proscribed the killing of a fetus as homicide have done so by separate enactments.[1] The *918 Louisiana legislature has not, as other legislatures have, clearly addressed the question of feticide as a category of homicide.
R.S. 14:3 provides that criminal provisions "cannot be extended by analogy so as to create crimes not provided for..." The common law rule of strict construction of penal statutes (e. g. State v. Fontenot, 112 La. 628, 36 So. 630 (1904) the merry-go-round case) was not completely discarded in the Criminal Code of 1942, as strenuously urged by the reporter. Morrow, Opportunities Lost, 17 Tul.L.Rev. 1, 4-12 (1942). The articles cannot be extended by analogy, and must be given a "genuine" construction (R.S. 14:3); doubt in extent of the statutes must be decided in favor of the accused and against the state. State v. Bosworth, 373 So.2d 152 (La.1979), State v. Young, 357 So.2d 503 (La.1978). Therefore, it is not within the power of this court to extend the definition of homicide to include feticide, nor can feticide be made a crime by implication.
We held in State v. Gyles, supra, citing the uniform authority in all American jurisdictions, that murder statutes punish only the killing of human beings born alive, in the absence of statutes expressly changing the definition of the crime. In the indictment before us, defendant is charged with the "murder of a fertilized implanted fetus." R.S. 14:2(7) does not say that a fetus or a human embryo is a human being, for the purpose of the murder statute, but only that the word "person" "includes a human being" and includes a human being "from the moment of fertilization and implantation." If the homicide statutes are to be amended to include feticide it must be done with greater clarity and less confusion than the amendment of the definition of the word "person" reflects, and within the limits fixed in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), which prohibits the regulation of voluntary abortions within the first trimester of pregnancy.
The only extraneous materials available to us which relate to the legislative intent in amending the definition of the word "person" do not reveal any intent to broaden the murder statute (except perhaps by implication), but rather an intent to legislate in the problematic field of abortion. Minutes, Senate Committee, Judiciary C, June 29, 1976. The minutes indicate that the purpose of the bill was "to include human beings (as "persons") from the moment of conception and therefore entitled to every protection of law." An intent to change the murder statute was not mentioned.
We can only conclude that the indictment here, charging defendant with the murder of a "fertilized implanted fetus in the womb" of its mother does not charge a crime.
For the reasons assigned, the judgment of the trial court is reversed, and the motion to quash the indictment is sustained.
SUMMER, C. J., dissents.
MARCUS and BLANCHE, JJ., dissent and assign reasons.
MARCUS, Justice (dissenting).
I disagree with the conclusion of the majority that the indictment here, charging defendant with the murder of a "fertilized implanted fetus in the womb" of its mother does not charge a crime. Homicide (all grades) is the killing of a "human being." La.R.S. 14:29. The question is whether "human being" in the homicide statute includes a "fertilized implanted fetus in the womb" of its mother. I think so. La.R.S. 14:2(7) defines "person" as including a "human being from the moment of fertilization and implantation." Since the definition of a person includes a "human being from the moment of fertilization and implantation," I consider it clear that a "human being" in the homicide statute includes a "fertilized implanted fetus in the womb" of its mother. Accordingly, I respectfully dissent.
*919 BLANCHE, Justice (dissenting).
I respectfully dissent. In State v. Gyles, 313 So.2d 799 (La.1975), this Court found that when the legislature first defined homicide in 1942, it intended to adopt the common law concept of that crime. For this reason, we found that the legislature in defining the crime of murder contemplated only the killing of a human being who had been born alive. However, this Court recognized the legislature's "constitutional power of the State to punish conduct which causes the death of an unborn child in a pregnant woman as long as it exercises that power in accordance with the dictates of Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)." The redefinition of "person" in 1976 indicates a clear intent to include within the term "human being", a "human being from the moment of fertilization and implantation." This redefinition by the legislature in 1976 was a response to this Court's ruling in Gyles, supra, and an effort to offer the unborn child the full protection of the criminal within the limitations of Roe, supra. The majority objects to the implicit amendment of R.S. 14:29 by the legislature's amendment of R.S. 14:2. Yet, the definitions of R.S. 14:2 are incorporated into all the provisions of the criminal code.
The redefinition of murder by the legislature to include feticide is within the bounds set by Roe, since that decision was limited to the regulation of the voluntary abortion. In Roe, the U. S. Supreme Court found that although the state did have a legitimate interest in protecting fetal life, this interest was not compelling until viability. Thus, the Court found that a state could not, by adopting one theory of life, override the privacy rights of the mother. The defendant here asserts no countervailing privacy right. While Roe absolutely prohibits state regulation of a mother's voluntary abortion during the first trimester, nothing in the decision prohibits the state's regulation of other forms of feticide. Roe does not prevent a state from adopting a particular theory as to when life begins, but rather prohibits the state from using this theory to override the rights of the pregnant woman. Roe v. Wade, supra, at 731, 93 S.Ct. 705.
For the reasons above, I would affirm the defendant's conviction.
NOTES
[*] Chief Judge PAUL B. LANDRY, Retired, is sitting by assignment as Associate Justice Ad Hoc in place of TATE, J.
[1] See N.Y.Rev.Stat. of 1829; Ark.Stat.Ann. § 41-2223 (1964); 22 Fla.Stat.Ann. § 782.09 (1965); 2 Kan.Stat.Ann. § 21-409 (1964); 25 Mich.Stat.Ann. § 28.554 (1954); 2A Miss.Code Ann. § 2222 (1942); 2 N.D. Century Code § 12-25-03 (1960); Okla.Stat.Ann. Title 21, § 713 (1958).