761 So.2d 1271 (2000)
STATE of Louisiana
v.
John CARR.
No. 99-K-2209.
Supreme Court of Louisiana.
May 26, 2000.
*1272 Richard P. Ieyoub, Atty. Gen., Douglas P. Moreau, William Henry Cooper, III, Baton Rouge, Counsel for Applicant.
Katherine M. Franks, Abita Springs, Counsel for Respondent.
CALOGERO, C.J.[*]
Defendant John Carr was charged with violating La. R.S. 14:98, Operating a Vehicle While Intoxicated, after police arrested him for riding his bicycle on Louisiana Highway 64 in an intoxicated condition. Carr filed a motion to quash, arguing that La. R.S. 14:98 was not sufficiently clear so as to put the public on notice that riding a bicycle while intoxicated could result in criminal penalties. The trial court, relying on State v. Guidry, 467 So.2d 156 (La.App. 3d Cir.1985), agreed, and granted defendant's motion to quash the bill of information. The court of appeal, expressly rejecting the Guidry court's reasoning, reversed. We granted defendant's writ application to determine whether La. R.S. 14:98 is applicable to a bicycle, and to resolve the split among the courts of appeal. Finding that La. R.S. 14:98 is ambiguous as applied to a bicycle, we reverse the court of appeal, and grant defendant's motion to quash.

FACTS AND PROCEDURAL HISTORY
On April 3, 1998, at about 6:30 A.M., the Zachary Police Department responded to a report that a male subject had fallen from his bicycle and was lying in the roadway on Highway 64 in East Baton Rouge Parish. When the officer reached the scene, he observed defendant, John Carr, riding a bicycle in the middle of the outside lane and swerving from left to right. As the *1273 police unit approached, defendant lost control of the bicycle and fell onto the shoulder of the road. The officer exited his vehicle and, while helping defendant to stand, detected a strong odor of alcohol. At this point, the officer advised defendant of his Miranda rights, and then conducted a horizontal gaze nystagmus test on him. Defendant failed the test, was placed under arrest, and charged with violating La. R.S. 14:98, Operating a Vehicle While Intoxicated, fourth offense.[1]
After being transported to the police station and again advised of his rights, defendant voluntarily submitted to an intoxilizer test. The test indicated a blood alcohol level of .299. Defendant was formally charged by bill of information with Operating a Vehicle While Intoxicated, third offense (felony).[2]
Defendant filed a motion to quash the bill of information arguing that La. R.S. 14:98 was not sufficiently clear so as to put the public on notice that riding a bicycle while intoxicated could result in criminal penalties. The trial court, relying on State v. Guidry, 467 So.2d 156 (La.App. 3d Cir. 1985), concluded that La. R.S. 14:98 did not apply to a bicycle, and granted defendant's motion to quash.[3]
The State appealed to the First Circuit Court of Appeal. The First Circuit, rejecting the Third Circuit's Guidry case, reversed, and held that under La. R.S. 14:98, a bicycle was an "other means of conveyance." State v. Carr, 738 So.2d 1173, 1175 (La.App. 1st Cir.1999). We granted defendant's writ application to determine whether La. R.S. 14:98 is applicable to a bicycle, and to resolve the split between the First and Third Circuits. State v. Carr, 99-2209 (La.2/16/00), 754 So.2d 950.

DISCUSSION
Defendant was charged with violating La. R.S. 14:98, Operating a Vehicle While Intoxicated, which is often referred to as "driving while intoxicated" or "DWI."[4] At the time of the offense, La. R.S. 14:98 read, in pertinent part:
A.(1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
* * *
(b) The operator's blood alcohol concentration is 0.10 percent or more by *1274 weight based on grams of alcohol per one hundred cubic centimeters of blood.
La.Rev.Stat. Ann. 14:98 A(1)(b) (West 1986 & Supp.1998) (emphasis added).
As is obvious from the text of the statute, a bicycle is not expressly enumerated as a means of conveyance to which the statute applies. Rather, the statute refers to "any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance." La. R.S. 14:98 A(1). The State asserts, and the court of appeal below found, that a bicycle is an "other means of conveyance" as that term is used in La. R.S. 14:98 A(1). In so concluding, the court of appeal reasoned that a bicycle falls under the dictionary definition of a "conveyance," and therefore, is covered under La. R.S. 14:98. The court of appeal was also persuaded by the fact that prior to 1942, which is when the present "other means of conveyance" language was first introduced into La. R.S. 14:98, riding a bicycle while intoxicated was a crime under the Louisiana Highway Regulatory Act of 1938. Defendant, however, argues that La. R.S. 14:98 is ambiguous as to its applicability to bicycles, and therefore, does not provide adequate notice to the public that one could face criminal penalties for riding a bicycle while intoxicated. And given that La. R.S. 14:98 is a criminal statute, it must be construed in the light most favorable to defendant under principles of lenity.
It is a well-established tenet of statutory construction that criminal statutes are subject to strict construction under the rule of lenity. State v. Carouthers, 618 So.2d 880, 882 (La.1993). Thus, criminal statutes are given a narrow interpretation and any ambiguity in the substantive provisions of a statute as written is resolved in favor of the accused and against the State. State v. Becnel, 93-2536, p. 2 (La.5/31/96), 674 So.2d 959, 960; Chevalier v. L.H. Bossier, 95-2075, p. 6 (La.7/2/96), 676 So.2d 1072, 1076 (citing State v. Piazza, 596 So.2d 817, 820 (La.1992)). The principle of lenity is premised on the idea that a person should not be criminally punished unless the law provides a fair warning of what conduct will be considered criminal. State v. Piazza, 596 So.2d 817, 820 (La.1992) (citing 3 N. Singer, Sutherland Statutory Construction § 59.04 (Sands 4th ed.1986)). The rule is based on principles of due process that no person should be forced to guess as to whether his conduct is prohibited. Id. (citing Dunn v. United States, 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979)).
Section 14:98 A(1) sets out the threshold requirements as to the statute's applicability. It states that La. R.S. 14:98 is applicable to "motor vehicle[s], aircraft, watercraft, vessel[s], and other means of conveyance." La. R.S. 14:98 A(1). As noted by the court of appeal below, La. R.S. 14:98 contains no definitions, nor is the term "other means of conveyance" defined in the Criminal Code. Carr, 738 So.2d at 1174. Nor does the statute expressly incorporate definitions from other sections of the Revised Statutes by reference.[5]Williams, 449 So.2d at 744. Therefore, in order to hold defendant criminally liable for riding his bicycle while intoxicated, we must determine whether La. R.S. 14:98 is sufficiently clear *1275 and unambiguous, notwithstanding the legislature's failure to define "other means of conveyance," so as to provide adequate notice to the public that riding a bicycle while intoxicated is a criminal offense. Piazza, 596 So.2d at 819-20.
Were we to consider section 14:98 A(1) in a vacuum, we might very well conclude that La. R.S. 14:98 is sufficiently clear of ambiguity so as to afford the public adequate notice as to its applicability to a bicycle. After all, a bicycle is unarguably a "means of conveyance." However, La. R.S. 14:98 consists of many parts and sections besides section 14:98 A(1). Therefore, for the purpose of deciding whether this criminal statute is sufficiently clear so as notify the public that a bicycle is within its scope, we consider the statute in its entirety.
La. R.S. 14:98 is a lengthy statute consisting of ten (10) sections, each of which has several subsections. However, the most significant section, for the purpose of determining whether the statute can fairly be applied to a bicycle, is section 14:98 J which was added in 1993. Section 14:98 J reads as follows:
This Subsection shall be cited as the "Child Endangerment Law". When the state proves in addition to the elements of the crime as set forth in Subsection A of this Section that a minor child twelve years of age or younger was a passenger in the motor vehicle, aircraft, watercraft, vessel, or other means of motorized conveyance at the time of the commission of the offense, of the sentence imposed by the court, the execution of the minimum mandatory sentence provided by Subsection B, C, or D of this Section, as appropriate, shall not be suspended. For the fourth conviction, at least two years of the sentence shall be imposed without benefit of suspension of sentence.
La.Rev.Stat. Ann. 14:98 J (emphasis added).
The most obvious feature of this part, given our discussion herein, is the legislature's use of the phrase "means of motorized conveyance," as opposed to simply "other means of conveyance" as used in section 14:98 A(1), and what that choice indicates about the applicability of section 14:98 A(1) to a non-motorized conveyance such as a bicycle. One way to interpret section 14:98 J, is that the legislature was merely referring to the threshold requirements of section 14:98 A(1) when it said "motorized conveyance," and was not creating an additional element to section 14:98 J, i.e., that the conveyance be motorized. Of course, the import of that interpretation would be that the legislature itself must have viewed section 14:98 A(1) as applicable only to motorized forms of conveyance, as the Third Circuit had held since the Williams decision in 1984.
And given the grammatical structure of section 14:98 J, this particular interpretation is plausible. For instance, the legislature refers to "the ... other means of motorized conveyance," instead of "an ... other means of motorized conveyance." Use of the definite article "the" implies that the legislature was referring to a specific "means of conveyance," i.e., the one established in section 14:98 A(1). And if that is true, then a bicycle could not fall under section 14:98 A(1) because it is not motorized. In short, if the legislature was attempting to add "motorized" as an additional element of section 14:98 J, the legislature chose a confusing grammatical structure to do it.
However, another way to interpret the phrase, and the State so urges, is to conclude that the legislature was trying to limit the application of section 14:98 J to those offenses involving a motorized conveyance. And of course, it would only be necessary to so limit section 14:98 J if section 14:98 A(1) was broader in application, i.e., applied to non-motorized conveyances, such as a bicycle.
Because the scope of section 14:98 J is not at issue in this case, we express no opinion as to which interpretation is correct. *1276 Rather, for our purposes here, it suffices to point out that section 14:98 J suggests two interpretations for the scope of an "other means of conveyance" under section 14:98 A(1). And given that section 14:98 J implies two reasonable interpretations for the term "other means of conveyance" in section 14:98 A(1), under principles of lenity we must interpret the statute in the light most favorable to defendant. Piazza, 596 So.2d at 820. Thus, for purposes of the charges at issue here, we conclude that "other means of conveyance" under La. R.S. 14:98 A(1) does not include a bicycle.
Nevertheless, the State argues that the historical evolution and legislative history of La. R.S. 14:98 reveal an intent on the part of the legislature to apply the statute to bicycles. In particular, the State points out that under the Highway Regulatory Act of 1938, bicycles were expressly subject to DWI regulation, and that when the DWI portion of the Highway Regulatory Act was repealed in 1942 by the same act that created La. R.S. 14:98, the legislature intended for La. R.S. 14:98 to apply to bicycles. In order to address the State's argument, an examination of the legislative history of La. R.S. 14:98 is necessary.
Louisiana first criminalized DWI in 1922. See 1922 La. Acts 132. Act 132 made it a misdemeanor "for any person, while in an intoxicated condition to operate any form of motor vehicle, whatsoever." 1922 La. Acts. 132, §§ 1-2 (emphasis added). Thus, when the first DWI statute was enacted, it clearly applied only to motorized forms of transportation.
In 1924 and 1926, the legislature added an additional element to the DWI crime created in Act 132. In particular, the legislature added "injury to person or property" as an element. See 1924 La. Acts 78; 1926 La. Acts 48. Thus, following the 1924 and 1926 amendments, the mere act of operating a vehicle while intoxicated was no longer an offensethe offender had to injure someone or cause property damage to another in order to face criminal penalties. See id. Given that injury or property damage was now a requisite, the legislature also made the crime a felony. See 1924 La. Acts 78, § 2; 1926 La. Acts 48, § 2. However, as in the original Act 122 of 1932, the offense defined by Act 48 applied only to motorized forms of transportation. See 1926 La. Acts 48, § 1 ("a motor vehicle of any nature whatsoever"); § 3 (repealing Act No. 132 of 1922, as amended by 1924 La. Acts 78).
In 1936, the legislature expanded the law to once again criminalize the mere act of operating a motor vehicle while intoxicated, i.e., DWI was once again a crime even if no injury or property damage occurred. See 1936 La. Acts 188. The mere act of operating a vehicle while under the influence was a misdemeanor offense, and if injury or property damage to another should result, the offense was a felony. See 1936 La. Acts 188, §§ 2-3. Just as with all prior versions of the statute, the offense expressly applied to motorized forms of transportation. See id. § 1 ("a motor vehicle of any nature whatsoever") (emphasis added). This series of statutes and amendments pertaining to DWI (hereinafter referred to collectively as "the Original DWI Statute") was in force until the adoption of the Criminal Code, and article 98, in 1942.
However, the Original DWI Statute was not the exclusive means by which one could incur criminal penalties for operating a vehicle while intoxicated. In 1928, the legislature enacted another DWI provision, separate and apart from the legislative scheme that had been progressing since 1922 with the Original DWI Statute. This new DWI proscription, entitled Persons Under the Influence of Intoxicating Liquor or Narcotic Drugs, was part of Act 296 of 1928, enacted to regulate traffic on the public highways of the state, and read as follows:
It shall be unlawful ... for any person... who is under the influence of intoxicating *1277 liquor ... to drive any vehicle upon any highway within this State.
1928 La. Acts 296, § 3 (emphasis added).
Furthermore, Act 296 defined a "vehicle" as follows:
Every device in, upon or by which any person or property is or may be transported or drawn upon a public highway, excepting devices moved by human power ... provided that for the purposes of [] this Act, a bicycle or a ridden animal shall be deemed a vehicle.

Id. § 2(a) (emphasis added).
Thus, beginning in 1928, Louisiana had two separate, coexistent statutory criminal schemes for punishing DWIthe Original DWI Statute, which was applicable anywhere in the state but pertained only to motor vehicles, and the new Act 296 of 1928, applicable only on state highways, but pertaining expressly to non-motorized means of transportation (bicycles and ridden animals).
Act 296, including its DWI provision, was subsequently subsumed into the Highway Regulatory Act of 1938. 1938 La. Acts 286. Throughout each version of the Highway Regulatory Act, the legislature maintained the DWI provision that it had introduced in Act 296. This series of DWI provisions (hereinafter referred to collectively as "the Highway DWI Statute") coexisted with the Original DWI Statute, and like the Original DWI Statute, was in effect until the legislature adopted the Criminal Code, and its article 98, in 1942.
By Act 7 of 1940, the legislature instructed the Louisiana State Law Institute to prepare a draft or projet for a collected codification of Louisiana's substantive criminal law.[6] 1940 La. Acts 7, § 1. The Law Institute prepared a projet, and by Act 43 of 1942 the legislature adopted the Louisiana Criminal Code. The new Criminal Code, as adopted by the legislature, contained article 98, entitled Operating a Vehicle While Intoxicated (currently located at La. R.S. 14:98), which read in pertinent part:
Operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, vessel, or other means of conveyance by a person under the influence of intoxicating liquor or narcotic drugs.
In addition to enacting article 98, Act 43 also repealed both the Original DWI Statute and the Highway DWI Statute. 1942 La. Acts 43, § 2 (repealing 1938 La. Acts 286, §§ 3, Rule 2(a), 12; 1938 La. Acts 320; 1940 La. Acts 143, § 2).
Thus, the term "other means of conveyance" was introduced into Louisiana's DWI statutory scheme when the legislature abandoned the dual criminal statutory scheme, i.e., the Original and the Highway DWI Statutes, and replaced them with a single DWI statute, article 98 (currently La. R.S. 14:98).
With the benefit of the statute's legislative history, we turn now to the State's argument. The State is correct in its assertion that the Highway Regulatory Act of 1938 criminalized riding a bicycle while intoxicated. And Act 43, which enacted article 98, did in fact repeal the DWI provision found in the Highway Regulatory Act, i.e., the Highway DWI Statute. What is less clear, however, is whether the legislature intended to include bicycles as part of the new article 98.
Admittedly, the Law Institute listed the Original DWI Statute (1938 La. Acts 320, §§ 1-7) and the Highway DWI Statute (1938 La. Acts 286, § 3, Rule 2(a)) under the section entitled "Louisiana statutes covered." However, the Law Institute's narrative under the section of comments entitled "Scope," does not state that the substantive provisions of both former statutes were to be included in article 98, and in fact, the comment belies that assertion. Most noteworthy is the Law Institute's *1278 statement that article 98 was to be "substantially the same as the former statute on intoxicated driving." 1942 La. Acts 43 (article 98 cmts.) (emphasis added).[7] The Law Institute's express reference to a single statute ("the former statute"), given that the very question we seek to answer is whether both of the former statutes were subsumed into article 98, is particularly ambiguous.[8] Further, the legislature's intent to apply article 98 to bicycles is made less clear by the fact that the new article 98 applied anywhere in the state not just on public roads. As between the two former statutes, the Original DWI Statute, and not the Highway DWI Statute, was the one that applied anywhere in the State. And the Original DWI Statute did not apply to bicycles.
Further, it cannot be ignored that prior to 1942, it was clear that the legislature was only interested in applying DWI laws to bicycles when they left the confines of private property and headed for the public roadways where others could be subject to danger. We cannot simply assume, given that the legislature had previously shown no interest in applying DWI laws to bicycles outside of the context of public roads, that the legislature intended to sweep bicycles into the scope of La. R.S. 14:98a statute not limited in application to the public roads. And because La. R.S. 14:98 is not limited in application to public roads, a determination that the legislature intended for the statute to encompass bicycles, includes the concomitant, but implausible, conclusion that the legislature intended to punish a person who rides his bicycle while drunk in his own backyard.[9] In the absence of an express statement, we decline to infer such an intention. For these reasons, we conclude that the legislature's intent to apply La. R.S. 14:98 to bicycles is at least ambiguous.

CONCLUSION
Given that section 14:98 A(1) is subject to two reasonable interpretations, under principles of lenity, we must interpret it in the manner favorable to defendant. Therefore, the term "other means of conveyance," as used in La. R.S. 14:98, does not include a bicycle.

DECREE
For the reasons assigned, the judgment of the court of appeal is REVERSED. The trial court judgment granting defendant's motion to quash the bill of information, which charged defendant with DWI, is reinstated. The case is remanded to the trial court for further proceedings.
KNOLL, J., concurs for additional reasons.
KIMBALL and VICTORY, JJ., dissent.
TRAYLOR, J., dissents and assigns reasons.
KNOLL, Justice, concurring and assigning additional reasons.
I agree with the majority's conclusion that 14:98(J) is ambiguous and that the legislative history does not reveal a clear intent by the Legislature to apply the statute to bicycles. As such, we must interpret the statute in favor of the accused and *1279 against the State. State v. Becnel, 674 So.2d 959, 960 (La.5/31/96). I concur to note that the statute's penalty provisions in four different sections of the statute, which provide that first, second, and third offenders receive suspended sentences when they participate in a driver improvement program, is further evidence of the ambiguity of whether the Legislature intended the statute to apply to bicycles.
TRAYLOR, J. (dissenting).
The paramount consideration in interpreting a statute is the legislature's intent. State ex rel. A.M., 98-2752 (La.7/2/99), 739 So.2d 188, 190; Theriot v. Midland Risk Ins., 95-2895 (5/20/97), 694 So.2d 184, 186. Determination of the legislature's intent begins with an examination of the text of the statute. State v. Barbier, 98-2923 (La.9/8/99), 743 So.2d 1236, 1238. In the realm of criminal statutory interpretation, provisions are to be given a genuine construction, according to the fair import of words. La.Rev.Stat. 14:3; State v. Robertson, 241 La. 249, 128 So.2d 646, 648 (1961). If the statute is clear and unambiguous, it is to be applied as written by the legislature. State v. Barbier, 98-2923 (La.9/8/99), 743 So.2d 1236, 1238 (La.1999) (citing La. Civ.Code art. 9; Touchard v. Williams, 617 So.2d 885 (La.1993)). Courts are not authorized to look outside its provisions when ascertaining its meaning. See State v. Pierre, 320 So.2d 185, 188 (La.1975). Nevertheless, a statute's legislative history is particularly enlightening when attempting to ascertain the legislature's intent, and is appropriate if some ambiguity in the text of the statute makes the legislature's intent unclear. State ex rel. A.M., 739 So.2d at 190.
In my attempt to ascertain the legislature's intent, i.e., whether the "means of conveyance" in La.Rev.Stat. 14:98 must be motorized, I start with the text of the statute. La.Rev.Stat. 14:98 A(1) applies to "motor vehicle[s], aircraft, watercraft, vessel[s], or other means of conveyance." A plain reading indicates that the enumerations are not limited to motorized means of transport. As the court of appeal noted, the statute lists watercraft in addition to vessels. Carr, 738 So.2d at 1173, 1176-77. Given that the term "vessel" would not unambiguously include non-motorized types of smaller watercraft, the legislature must have added the term "watercraft" to encompass non-motorized forms of watercraft. Further, as noted in the trial court, hanggliders are clearly aircraft, but they are not motorized. Likewise, nothing about the term "other means of conveyance," in and of itself, suggests that it must be motorized. Therefore, unless the word "motor" applies to the entire enumeration, La.Rev.Stat. 14:98 does not require, on its face, that the means of transport necessarily be motorized.
Given that "motor" immediately precedes "vehicle," the most realistic construction is that "motor" was placed in the enumeration, not to modify the entire chain, but rather to refer to a "motor vehicle." Although written as two words, the term "motor vehicle" is used throughout the Revised Statutes, as well as in common usage, as if it were one. Further, the Traffic Code, itself entitled "Motor Vehicles and Traffic Regulation," provides a definition for "motor vehicle" as well as "vehicle." La.Rev.Stat. 32:1(40) (motor vehicle); 32:1(92) (vehicle); see Random House Dictionary of the English Language (1967) at 934. Had the legislature chosen to precede the enumeration with "motorized" instead of "motor," perhaps I would agree with the majority.[1] Given that our concern is specifically with the term "other means of conveyance," it is telling that the legislature did not use the term "other *1280 means of motorized conveyance," as it did in La.Rev.Stat. 14:98 J. In sum, nothing about La.Rev.Stat. 14:98, on its face, indicates that the legislature intended to limit its application to motorized means of transport.
Notwithstanding the unambiguous language of the statute, the majority agrees with the defendant and concludes that the legislature did not intend for La.Rev.Stat. 14:98 to apply to non-motorized means of transport. Defendant argues that prior to the enactment of La.Rev.Stat. 14:98 in 1942, the DWI criminal statutes applied only to motorized means of transportation. On the other hand, other non-criminal "traffic" statutes or "civil" statutes applied to operating non-motorized means of transport, such as a bicycle, while intoxicated.
Unlike the Original DWI Statute which criminalized DWI without regard to where the offense took place, Act 296 was limited in application to the highways of the state. See 1928 La. Acts 296, § 1.[2] And most significant for our purposes, Act 296 used the term "vehicle," as opposed to "motor vehicle," and expressly stated that a bicycle was included in the term "vehicle." 1928 La. Acts 296, § 2(a). Violations of Act 296 were misdemeanors punishable by fine and/or jail time. Id. § 76. Thus, beginning in 1928, Louisiana had two separate, coexistent statutory criminal schemes for punishing DWIthe Original DWI Statute, which was applicable anywhere in the state but pertaining only to motor vehicles, and the new Act 296 of 1928, applicable only to state highways, but pertaining expressly to non-motorized means of transportation (bicycles and ridden animals). Criminal penalties, however, were common to both statutory schemes. In short, as of 1928, riding a bicycle on a state highway while intoxicated was a crime.
Act 296 was subsequently replaced by the Highway Regulatory Act of 1932, 1932 La. Acts 21, which in turn was replaced by the Highway Regulatory Act of 1938, 1938 La. Acts 286. Throughout each version of the Highway Regulatory Act, the legislature maintained the DWI provision that it had introduced in Act 296, always providing criminal penalties for operating a vehicle, including a bicycle, while intoxicated if the act was committed upon a state highway, public road, or bridge. See 1938 La. Acts 286, § 1(a); § 3, Rule 2(a); § 12(d). This series of DWI provisions (hereinafter referred to collectively as "the Highway DWI Statute"), coexisted with the Original DWI Statute, and like the Original DWI Statute, was in effect until the legislature adopted the Criminal Code, and article 98, in 1942.[3]
By Act 7 of 1940, the legislature instructed the Louisiana State Law Institute to prepare a draft or project for a collected codification of Louisiana's substantive criminal law.[4] 1940 La. Acts 7, § 1. The legislature adopted the Louisiana Criminal Code by Act 43 of 1942. The new Criminal Code, as adopted by the legislature, contained article 98, entitled Operating a Vehicle While Intoxicated (currently located at La.Rev.Stat. 14:98), which read in pertinent part:
Operating a vehicle while intoxicated is the operating of any motor, vehicle, aircraft, vessel, or other means of conveyance by a person under the influence of intoxicating liquor or narcotic drugs.
Whoever commits the crime of operating a vehicle while intoxicated shall be fined not more than [$300], or imprisoned *1281 for not more than [6] months, or both.
In addition to enacting article 98, Act 43 also repealed both the Original DWI Statute and the Highway DWI Statute. 1942 La. Acts 43, § 2 (repealing 1938 La. Acts. 286, §§ 3, Rule 2(a), 12; 1938 La. Acts 320; 1940 La. Acts 143, § 2).
Thus, the term "other means of conveyance" was introduced into Louisiana's DWI statutory scheme when the legislature abandoned the dual (the Original and the Highway DWI Statutes) criminal statutory DWI scheme in lieu of a single DWI statute, article 98 (currently La.Rev.Stat. 14:98). The inquiry then becomes whether the legislature intended for article 98 to encompass both of the prior criminal statutory schemesboth of which were repealed by the same Act that created article 98.
After reviewing the revision comments accompanying article 98, I must conclude that the legislature intended to encompass both criminal schemes. The Law Institute listed the Original DWI Statute (1938 La. Acts 320, §§ 1-7) and the Highway DWI Statute (1938 La. Acts 286, § 3 (Rule 2(a))) as statutes "covered" by the new article 98. Furthermore, as for the scope of the statute, the Institute noted that the addition of aircraft was a change in the law from 1938, but otherwise, the article is "substantially the same as the former statute on intoxicated driving." 1942 La. Acts 43 (article 98 cmts.).[5]
Further, we have previously held that the revision comments may be considered when interpreting a criminal statute. State v. Gyles, 313 So.2d 799, 802 (La.1975) (citing State v. Truby, 211 La. 178, 29 So.2d 758 (1947)). The comments accompanying the articles of the newly (1942) enacted Criminal Code are particularly enlightening and persuasive in light of Act 7 of 1940. State v. Davis, 208 La. 954, 23 So.2d 801, 808 (1945). By Act 7 of 1940, the legislature commissioned the Institute to prepare explanatory statements and notes to accompany the new criminal articles. 1940 La. Acts 7, § 2. Then, by a concurrent resolution of both houses, the legislature made an express finding that the comments prepared by the Institute would serve as useful information to users of the new Code, and the comments, as contained in the project, would be printed along with the new articles. See Senate Concurrent Resolution No. 7 of 1940. Thus, given that the comments at issue bear the imprimatur of the legislature, they are particularly enlightening. Davis, 23 So.2d at 808. In sum, when considering the revision comments in addition to the fact that the legislature has criminalized operating non-motorized means of conveyance (in particular a bicycle) while intoxicated, for nearly as long as it has criminalized motorized conveyances, there is no indication that the legislature intended to change the law by excluding non-motorized conveyances when it enacted article 98.[6]
*1282 Against this backdrop of legislative history of Louisiana's DWI laws, the majority's conclusion that the legislature did not intend to include non-motorized means of transportation in La.Rev.Stat. 14:98, because such an inclusion would have been a departure from prior law, is erroneous. First, this is based on an incorrect premise, i.e., that the Highway DWI Statute was a "civil" statute as opposed to a criminal statute. To the contrary, the Highway DWI Statute, throughout its years in force, subjected the offender to a fine and/or jail time. Because a violation of the Highway DWI Statute could result in a loss of liberty, the statute was a criminal statute. Chevalier v. L.H. Bossier, Inc., 95-2075 (La.7/2/96), 676 So.2d 1072, 1076 (citing State v. Page, 332 So.2d 427 (La. 1976)). The fact that the Highway DWI Statute was part of the Highway Regulatory Act, and limited in application to state highways, does not change that characterization. See Id. This is especially true in light of the fact that Louisiana's substantive criminal law, prior to 1942, was not found in a single compiled criminal code.[7] Thus, contrary to the majority's conclusion, no drastic change in the law results from including non-motorized means of transport in La.Rev.Stat. 14:98. To the contrary, a more prominent change would have resulted had non-motorized conveyances not been included by the legislature, especially since the same act that enacted article 98 repealed the Highway DWI Statute.[8]
In addition to the plain wording of the statute and its legislative history, Section 14:98 J is also a strong indication that the legislature would have expressly limited section Section 14:98 A(1) to motorized vehicles had it intended to do so. Section 14:98 J, the Child Endangerment Law, expressly applies to "any other means of motorized conveyance." La.Rev.Stat. 14:98 J (emphasis added). The legislature added section 14:98 J in 1993, in order to heighten the penalty for DWI when the offender places a child twelve years of age or younger in danger as a result of the offense. See La.Rev.Stat. 14:98 J. No such changes were made to La. Rev. State 14:89 at that time, nor have any such changes subsequently been made.
The fact that La.Rev.Stat. 14:98 provides that DWI violators may be punished by participation in a court-approved driver improvement program does not prove that La.Rev.Stat. 14:98 excludes bicycles. The plain language of La.Rev.Stat. 14:98 A(1) specifically states that the operation of "aircraft" or "watercraft" while intoxicated constitutes a violation. The legislature's specific inclusion of "aircraft" and "watercraft" indicates that DWI was intended to cover many types of conveyances, not only those which would be directly remedied by a driver improvement program.
After reviewing the legislative history, I find that the legislature intended to include non-motorized means of transport in La.Rev.Stat. 14:98. Therefore, a bicycle is an "other means of conveyance" as that term is used in the statute. It is not the business of this court to declare what the legislature intended. Our job is to interpret ambiguity, and I do not believe, in *1283 light of the legislative history, that there is ambiguity in this case. Accordingly, I respectfully dissent.
NOTES
[*] Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] Defendant was also charged with violating La. R.S. 32:58 (Careless Operation), La. R.S. 32:197 (Riding on roadways and bicycle paths), and La. R.S. 32:194 (Traffic laws apply to persons riding bicycles).
[2] Defendant had been convicted twice before in 1996 for violating La. R.S. 14:98. At the time of his arrest for this offense, he was charged as a four time offender because of another La. R.S. 14:98 conviction following an offense committed in 1984. However, that offense was committed more than 10 years prior to his offense in this case, and therefore, could not be used to enhance the penalty for the charges at issue. La. R.S. 14:98 F(2).
[3] Guidry is the only other case in which a Louisiana appellate court considered the issue of whether a bicycle is an "other means of conveyance" under La. R.S. 14:98. Relying on State v. Williams, 449 So.2d 744 (La.App. 3d Cir.), writ denied, 452 So.2d 172 (La.1984), for the proposition that La. R.S. 14:98 is limited in application to motorized vehicles, and principles of lenity, State v. Brown, 378 So.2d 916 (La.1979), the Guidry court concluded that riding a bicycle while intoxicated did not constitute a chargeable offense under La. R.S. 14:98. 467 So.2d at 158.

In Williams, the case upon which the Guidry court relied, the Third Circuit held that riding a horse while intoxicated was not a violation of La. R.S. 14:98. 449 So.2d at 748. The Williams court reasoned that La. R.S. 14:98 was ambiguous as to its application to a live animal such as a horse because a horse is fundamentally different in nature than "motor vehicles," "aircraft," etc. Id. at 747. The court also noted that in two previous cases, State v. Hightower, 238 La. 876, 116 So.2d 699 (1959), and State v. McAlister, 234 La. 1028, 102 So.2d 444 (1958), this Court had found that use of a motorized vehicle was a pivotal element to a prosecution under La. R.S. 14:98. Williams, 449 So.2d at 747-48.
[4] The bill of information states that defendant's offense is "Driving While Intoxicated."
[5] The statute's express failure to incorporate definitions from other sections of the Revised Statutes is significant in light of the Louisiana Highway Regulatory Act, La. R.S. 32:1 et seq., which currently defines a vehicle to include a bicycle. La. R.S. 32:1(92). In addition to no express invitation in La. R.S. 14:98 to include other definitions by reference, we note that the Highway Regulatory Act expressly states that the definitions provided are for use in that Act. Id. § 1. Therefore, given that La. R.S. 14:98 is a criminal statute whose provisions must be strictly construed, we decline to draw any inference, when interpreting the scope of La. R.S. 14:98, from the legislature's decision to regulate bicycles as vehicles in the Highway Regulatory Act. Nonetheless, La. R.S. 14:98 expressly applies to "motor vehicles," which are defined separately under the Highway Regulatory Act, id. § 1(40), and do not include bicycles. See id.
[6] At this time, Louisiana's substantive criminal law existed in scattered statutes and was not collected in one volume or title.
[7] We also note that article 98, as does the current La. R.S. 14:98, appeared in the section of the Criminal Code entitled "Driving Offenses." Typically, one does not "drive" a bicycle. See Williams, 449 So.2d at 748.
[8] This is especially true in light of the comments that accompanied article 96, Aggravated Obstruction of a Highway of Commerce, of the newly (1942) enacted Criminal Code. As to article 96, the Law Institute stated that "[t]hese articles group all former legislation on the subject." If the new article 98 was intended to encompass both of the former statutes, one must ask why the Law Institute did not state, as it did for article 96, that article 98 encompassed "all former legislation."
[9] We do not lose sight of the fact that defendant herein was on a state highway, clearly a public road, and not in his own backyard. We merely use the distinction for purposes of examining the legislature's intent.
[1] For instance, had the legislature referred to "any motorized vehicle, aircraft, watercraft, vessel, or other means of conveyance," it would have been much easier to conclude that "motorized" refers to the entire enumeration. Again, however, the legal as well as common usage of "motor vehicle," as a single entity, makes any other construction farfetched at best.
[2] Unlike the Original DWI Statute, Act 296 did not differentiate between those violations which involved injury or property damage to another, and those that did not. See 1928 La. Acts 296, §§ 3, 76.
[3] The DWI provision of the Highway Regulatory Act was amended one last time by 1940 La. Act 142, before its repeal in 1942. That amendment is not pertinent.
[4] At this time, Louisiana's substantive criminal law existed in scattered statutes and was not collected in one volume or title.
[5] I note that La.Rev.Stat. 14:98, as did the original article 98, appears in the section of the Criminal Code entitled "Driving Offenses." Typically, one does not not "drive" a bicycle, however, the Highway DWI Statute, which expressly applied to bicycles, also used the term "drive." Thus, I cannot conclude that the legislature's decision to include La. Rev.Stat. 14:98 in the "Driving Offenses" section of the Criminal Code evidences an intent to limit its application to modes of transportation that are typically "driven."
[6] Also noteworthy is that the penalty of DWI under the newly enacted article 98 was no harsher than the penalty for DWI under the Highway DWI Statute which included bicycles. The penalty for operating a bicycle while intoxicated under the Highway DWI Statute was thirty days to four months in jail and/or a fine of $50 to $250. Similarly, the penalty for operating an "other means of conveyance" under the new article 98, when enacted in 1940, was zero to six months in jail and/or a fine of $0 to $300 for a first offense. Under both statutes, both first and second offenses were misdemeanors. The similarity in the penalties belies the assertion that the legislature did not include non-motorized transportation, such as bicycles, in article 98 because it was a much harsher criminal provision.
[7] Even today, almost sixty years after our Criminal Code was compiled, criminal statutes are situated in other titles of the Revised Statutes. E.g. La.Rev.Stat. Ann. 23:1163 (criminalizing an employer's attempt to collect form employees any amount for the purpose of paying workers' compensation premiums); Chevalier, 676 So.2d at 1076.
[8] Defendant argues that because La.Rev.Stat. 14:98, unlike its predecessor, the Highway DWI Statute, applies anywhere in the state, including private property, the general public is sure to be caught unaware should we find that La.Rev.Stat. 14:98 includes non-motorized forms of transport, i.e., most people would not understand that criminal penalties could attach for riding a bicycle, while intoxicated, in one's own backyard. While speculation as to potential factual scenarios can be fascinating, it is inappropriate for our task at hand. As defendant was arrested for DWI on a state highway, we need not consider any potential notice problem associated with a DWI offense committed in his backyard.