861 So.2d 202 (2003)
STATE of Louisiana
v.
Robert "Bob" ODOM.
No. 2002 KA 2404.
Court of Appeal of Louisiana, First Circuit.
June 27, 2003.
Doug Moreau, District Attorney, Baton Rouge, by Sandra Ribes, Mark Pethke, *203 Assistant District Attorneys, Counsel for Appellant State of Louisiana.
Mary Olive Pierson, Karl Koch, Baton Rouge, Counsel for Defendant/Appellee Robert "Bob" Odom.
Before: KUHN, DOWNING, and GAIDRY, JJ.
KUHN, J.
Defendant, Robert "Bob" Odom, the Commissioner of the Louisiana Department of Agriculture and Forestry, was indicted by a grand jury and charged with 21 counts of various felony offenses including public bribery, conspiracy to commit public bribery, felony theft, conspiracy to commit felony theft, extortion, malfeasance in office, maintaining false public records, money laundering and conspiracy to commit money laundering. The state subsequently dismissed Counts 4, 5, 9, 10, 12, 13, 14, 15, 16, 17, and 21. The remaining charges consisted of conspiracy to commit public bribery (Count 1), a violation of La. R.S. 14:26 and 14:118; public bribery (Counts 2 and 3), violations of La. R.S. 14:118; conspiracy to commit felony theft (Count 6), a violation of La. R.S. 14:26 and 14:67; felony theft (Counts 7, 8 and 11), violations of La. R.S. 14:67; filing or maintaining false public records (Count 18), a violation of La. R.S. 14:133; money laundering involving funds valued at twenty thousand dollars or more but less than one hundred thousand dollars (Count 19), a violation of La. R.S. 14:230; and conspiracy to commit money laundering (Count 20), a violation of La. R.S. 14:26 and 14:230.
For the reasons which follow, we affirm the rulings of the trial court on November 8, 2002, granting the defendant's motions to quash portions of Counts 1, 6, 7, 8, and 11.

Background and Facts
The indictment and the bill of particulars show that the state's case has three components. Counts 1, 2, and 3 (public bribery and conspiracy to commit public bribery) pertain to allegations that defendant received bribes (campaign contributions, kickbacks, and a condominium "sold" to his daughter) from warehouse owners in exchange for food storage contracts. The State of Louisiana receives commodities from the federal government to be used for schools and other programs. The Department of Agriculture and Forestry (Department) contracts via the bid process with private warehouse owners to store cases of these commodities. The food is stored on a per case basis for a period of time. Each time the food comes into a particular warehouse, the Department is charged. The budget for food storage contracts is alleged to be four million dollars ($4,000,000) per year. Defendant, some of his employees, and some warehouse owners are alleged to have conspired to manipulate the bid process so that certain owners would receive contracts.
The second part of the state's case pertains to the use of Department employees and equipment for the personal use of defendant, his family and his church. Count 6 charges defendant with conspiracy to commit felony theft and Counts 7, 8, and 11 charge him with felony theft. The state alleges that the use of employee services and equipment and the late payment for pine seedlings constitute felony theft.
The remaining counts charge defendant with filing or maintaining false records (by failing to report income from the bribe money and items he received on his tax returns) (Count 18), and with money laundering and conspiracy to commit money laundering (by defendant's church repaying a loan made from his campaign fund, by paying day care expenses of his grand-children, *204 and by making a "love offering" to his pastor) (Counts 19 and 20).[1]
During the course of the pre-trial proceedings, the defendant filed a lengthy motion for a bill of particulars. The state filed several answers to the request for a bill of particulars. On November 8, 2002, the state filed a lengthy, revised bill of particulars, which it indicated was the final bill of particulars. Defendant also filed several motions to quash based upon numerous grounds. The motions sought to quash some counts in their entirety and to quash portions of some counts.
On November 8, 2002, the trial court ruled on the motions to quash which had been filed up to that date.[2] The trial court granted some of the relief sought by defendant in the motions to quash, including an order that Counts 7, 8, and 11 be quashed as to allegations of theft of "employee services" and that the alleged acts in Counts 1, 2, 3, 18,[3] 19, and 20 be limited to those not barred by the time limitations of La.Code Crim. P. art. 572.[4] The trial court also ordered that language in some counts (such as "known and unknown" co-conspirators and "money of the citizens of the State of Louisiana") be removed.
The state filed this appeal, challenging that portion of the November 8, 2002 ruling that granted the motions to quash as to five counts: conspiracy to commit public bribery (Count 1), conspiracy to commit felony theft (Count 6) and felony theft (Counts 7, 8, and 11). Defendant filed with this court a motion to dismiss the appeal or, in the alternative, to expedite this appeal or convert it to a supervisory writ. This court denied the motion to dismiss this appeal but granted the request for expedited treatment. In our action on the motion, we further stated that we "neither prohibit nor order the maintaining of the December 2, 2002 trial date on any matters not the subject of this appeal." State v. Odom, 02-2400 (La.App. 1st Cir.11/25/02).
The state filed a motion to continue the trial, which was scheduled for December 2, 2002.[5] The trial court denied this motion, and the state filed a writ application seeking review of that ruling. This court denied the writ, and the state sought review with the Louisiana Supreme Court. State v. Odom, 02-2594 (La.App. 1st Cir.11/27/02). The Supreme Court granted the motion for continuance and issued a per curiam stating that the district court should not reset the case until the merits of all its rulings with respect to the remaining *205 counts have been finally resolved upon timely application for review. State v. Odom, 02-2932 (La.12/5/02), 835 So.2d 1286. Subsequently, this court issued an order setting deadlines for the state and defendant to file pretrial motions, for the trial court to hold hearings, and for the trial court to issue rulings. The order further provided that all motions for appeal and notices of application for supervisory writs were to be filed within five days of the rulings, at which time, this court would consider expediting the matters.
Subsequently, the state filed notices of appeal of the trial court's rulings on December 5 and December 20, 2002, granting defendant's motions to quash.[6] Defendant filed a motion to consolidate the matters and to expedite the proceedings in the two appeals by the state (02-2404 and 02-2698) and the writ application of the defendant (02-2701). On January 28, 2003, this court issued an order granting the motion to consolidate the matters for oral argument and to expedite the proceedings. These matters were set on a docket of this court and orally argued by the parties.
In this appeal, we address the merits of two of the trial court's rulings quashing portions of several counts. The first ruling is the trial court's quashing of the portion of the charge in Count 1 (conspiracy to commit public bribery) that referred to conduct occurring prior to August 22, 1998. The second ruling is the trial court's quashing of portions of Counts 6, 7, 8, and 11, which pertain to the use of employee services.
Louisiana Code of Criminal Procedure article 484 provides the authority for a bill of particulars:
A motion for a bill of particulars may be filed of right in accordance with Article 521. The court, on its own motion or on motion of the defendant, may require the district attorney to furnish a bill of particulars setting forth more specifically the nature and cause of the charge against the defendant.
Supplemental bills of particulars or a new bill may be ordered by the court at least seven days before the trial begins.
When a bill of particulars is furnished, it shall be filed of record and a copy of the bill shall be given to the defendant.
La.Code of Criminal Procedure article 485 includes a provision for granting a motion to quash if it appears from the bill of particulars and the indictment that the offense charged was not committed, that defendant did not commit it or if there is another ground for quashing the indictment. Article 485 provides:
If it appears from the bill of particulars furnished under Article 484, together with any particulars appearing in the indictment, that the offense charged in the indictment was not committed, or that the defendant did not commit it, or that there is a ground for quashing the indictment, the court may on its own motion, and on motion of the defendant shall, order that the indictment be quashed unless the defect is cured. The defect will be cured if the district attorney furnishes, within a period fixed by the court and not to exceed three days from the order, another bill of particulars which either by itself or together with any particulars appearing in the indictment so states the particulars as to make it appear that the offense charged was committed by the defendant, or that there is no ground for quashing the indictment, as the case may be.
*206 La.Code of Criminal Procedure article 532 provides the general grounds for a motion to quash:
A motion to quash may be based on one or more of the following grounds:
(1) The indictment fails to charge an offense which is punishable under a valid statute.
(2) The indictment fails to conform to the requirements of Chapters 1 and 2 of Title XIII. In such case the court may permit the district attorney to amend the indictment to correct the defect.
(3) The indictment is duplicitous or contains a misjoinder of defendants or offenses. In such case the court may permit the district attorney to sever the indictment into separate counts or separate indictments.
(4) The district attorney failed to furnish a sufficient bill of particulars when ordered to do so by the court. In such case the court may overrule the motion if a sufficient bill of particulars is furnished within the delay fixed by the court.
(5) A bill of particulars has shown a ground for quashing the indictment under Article 485.
(6) Trial for the offense charged would constitute double jeopardy.
(7) The time limitation for the institution of prosecution or for the commencement of trial has expired.
(8) The court has no jurisdiction of the offense charged.
(9) The general venire or the petit jury venire was improperly drawn, selected, or constituted.

Count 1
Count 1 charged defendant with conspiracy to commit public bribery[7] from "on or about January 1985 continuing through July 2002." The indictment specifically states:
COUNT ONE: CONSPIRACY TO COMMIT PUBLIC BRIBERY, violating Louisiana Revised Statutes 14:26 and 14:118, in that
From on or about January 1985 continuing through July 2002, Robert "Bob" Odom, Jr., a person elected to public office, Commissioner of Agriculture and Forestry, knowingly and intentionally conspired with B. Lehman Williamson, Tommy Roshto, Ann Marie Williamson, Robert Moore and others, known and unknown to accept, directly or indirectly, anything of apparent present or prospective value, including but not limited to cash payments and a condominium, with the intent to influence his conduct in relation to his position, employment, or duty, involving warehouse food storage contracts;
The state's bill of particulars contains over ten pages addressing Counts 1, 2, and 3. The bill of particulars states that defendant's "involvement in the conspiracy began in 1987 and continued into July 2002" and that defendant conspired with some warehouse owners "to manipulate the process for warehouse food storage...." The bill alleges that in exchange for the award of contracts, these owners paid bribes to defendant in the form of direct payments, campaign contributions and a condominium given to defendant's daughter. The state submits a list of warehouse owners' campaign contributions to defendant from November 1985 through September 1999. The state contends that the contributions *207 are "acts in furtherance and some are bribes." The bill further contains a list of seven items which it contends are "additional acts in furtherance."
The court quashed any allegations in Count 1 referring to activity that occurred before August 22, 1998, a date four years prior to the date of the indictment, based upon the time limitations for prosecution in La.Code Crim. P. art. 572. The trial judge further found that the exception in Article 573(3) to the time limits applicable to the crime of public bribery was not applicable to the charge of conspiracy to commit public bribery. The judge reasoned that the offenses of public bribery and conspiracy to commit public bribery are separate and distinct offenses.
La.Code of Criminal Procedure article 572 provides for the time periods applicable to defendant's offenses, in pertinent part:
[N]o person shall be prosecuted, tried, or punished for an offense not punishable by death or life imprisonment, unless the prosecution is instituted within the following periods of time after the offense has been committed:
* * *
(2) Four years, for a felony not necessarily punishable by imprisonment at hard labor;
La.Code of Criminal Procedure article 573 provides for specific exceptions to the time periods established in Article 572. Article 573 states:
The time limitations established by Article 572 shall not commence to run as to the following offenses until the relationship or status involved has ceased to exist when:
(1) The offense charged is based on the misappropriation of any money or thing of value by one who, by virtue of his office, employment, or fiduciary relationship, has been entrusted therewith or has control thereof.
(2) The offense charged is extortion or false accounting committed by a public officer or employee in his official capacity.
(3) The offense charged is public bribery.
(4) The offense charged is aggravated battery (R.S. 14:34) and the victim is under seventeen years of age.
In its brief, the state presents several reasons for its assertion that the trial court's ruling was erroneous. First, the state argues that the time limitation for prosecution of the offense of conspiracy falls within the exception of La.Code Crim. P. art. 573(3). It specifically argues that the underlying offense for the conspiracy offense is contained in subsection (3) and that there is public policy for applying the exception to conspiracy in addition to the offense of public bribery. The state argues that policy considerations for the public bribery exception are equally applicable to and remain the same as those for conspiracy to commit public bribery. The state further argues that Article 573 recognizes that the time limitations should not commence to run until officials are out of their offices.
Defendant counters that the exception in La.Code Crim. P. art. 573(3) only applies when the charge is public bribery, not conspiracy to commit public bribery, as charged in Count 1. We agree.
The offense of conspiracy to commit public bribery, La. R.S. 14:26 and 118, is punishable by a fine of not more than $500.00, imprisonment with or without hard labor for not more than two and one half years, or both. Thus, this offense is one which is not necessarily punishable at *208 hard labor and has a four year time period for prosecution.
La.Code of Criminal Procedure article 573(3) provides that when the offense charged is public bribery, the time limitations in Article 572 shall not commence to run until the relationship or status involved has ceased to exist. It is clear from the wording of Article 573(3) that it expressly provides for the exception in the offense of public bribery; the offense of conspiracy to commit public bribery is not listed in the statute. Although the state argues that the public policy concerns warrant an interpretation that the exception applies to defendant, a public official at the time of his indictment, it has cited no authority for its proposition. We cannot find any authority for extending the exception in subsection (3) to the crime of conspiracy to commit public bribery. Nor has the state shown that the legislature meant the exception to apply to conspiracy to commit public bribery.
Furthermore, the state quotes a portion of the Official Revision Comment (a) to Article 573, which states:
Even under the policy of definite periods of limitation, adopted in Art. 572, consideration must be given to certain particular types of cases in which that policy does not properly operate. Most states that have a definite time system have seen the necessity for so doing....
We do not interpret this comment as authority for the state's interpretation of the statute. Rather, we believe that it is an explanation as to why there are exceptions to the definite periods of limitation of prosecution provided in Article 572.
Moreover, in determining the meaning of a criminal statute, penal statutes must be "given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La. R.S. 14:3; State v. Pierre, 500 So.2d 382, 384 (La.1987). Nevertheless, it is a well-established tenet of statutory construction that criminal statutes are subject to strict construction. Any ambiguity in the substantive provisions of a criminal statute is resolved in favor of the accused and against the state. State v. Carr, 99-2209, p. 4 (La.5/26/00), 761 So.2d 1271, 1274. Therefore, we decline to interpret the exception in La.Code Crim. P. art. 573(3) to apply to the offense of conspiracy to commit public bribery.
Additionally, the state argues that the trial court's ruling amounted to a prohibited pre-trial motion in limine excluding evidence. The state cites State v. Smith, 590 So.2d 58 (La.1991), and State v. Allen, 99-3257 (La.11/17/99), 750 So.2d 207, as authority for its argument.
In both Smith and Allen, the Louisiana Supreme Court reversed pre-trial rulings granting motions in limine to exclude evidence. In State v. Smith, the court ruled that the evidence at issue might be relevant regarding a particular issue raised in that case and that the trial court should make rulings on relevancy during the course of the trial as the questions were presented. Likewise, in State v. Allen, the court generally stated in a per curium opinion that relevancy of evidence is determined at the time it is offered.
The state also argues that the trial court's ruling ignores the fact that "the evidence which the trial court has precluded under count one still remains validly admissible for counts two and three." It contends that under State v. Prieur, 277 So.2d 126 (La.1973), or La.Code Evid. art. 404(B)(1), the evidence is admissible because it relates to conduct that constitutes an integral part of the act or transaction *209 that is the subject of the present proceeding.
We do not find that the trial court's ruling quashing portions of Count 1 is actually a pretrial ruling that certain evidence cannot be admitted as to Counts 2 and 3. The record indicates that the ruling pertains solely to Count 1. From our reading of the record, the trial court has not made any determination as to any questions of admissibility of evidence relevant to the charges of public bribery in Counts 2 and 3. There is a distinction between the prohibition against prosecuting defendant as to certain acts and the use and admissibility of evidence about those acts in the prosecution of another crime. The fact that the state is prohibited from charging defendant with conspiracy to commit public bribery as to certain campaign contributions does not automatically exclude the introduction of relevant and admissible evidence of the campaign contributions at a trial on the related charges of public bribery. We do not express an opinion here on the admissibility of such evidence.
Thus, the state's assignment of error number one lacks merit.

Counts 6, 7, 8, and 11
Count 6 charges defendant with conspiracy to commit felony theft. Counts 7, 8, and 11, charge him with felony theft of Department equipment, the services of Department employees, and items such as pine seedlings. The counts as stated in the indictment are as follows:
COUNT SIX: CONSPIRACY TO COMMIT FELONY THEFT, violating Louisiana Revised Statute 14:26 and 14:67, in that
From 1980 continuing through June 2002, Robert "Bob" Odom, Jr., a person elected to public office, Commissioner of Agriculture and Forestry, knowingly and intentionally conspired with Richard Herrin, Eric Gates, Tom Jacocks, Robert Rozanski, Melvin Lyons, David Stilley, Terrell Delphin, David Fields, Randall Johnson, Kevin Hopper and others known and unknown, to misappropriate through fraudulent conduct, practices, or representations, through various means, the money of the citizens of the State of Louisiana, with the intent to deprive them permanently of their money in an amount over $500.00;
COUNT SEVEN: FELONY THEFT, violating Louisiana Revised Statute 14:67, in that
From 1980 continuing through June 2002, Robert "Bob" Odom, Jr., a person elected to public office, Commissioner of Agriculture and Forestry, misappropriated through fraudulent conduct, practices, or representations, by the misuse of airplanes and airplane pilots for his personal use, the money of the citizens of the State of Louisiana, with the intent to deprive them permanently of their money in an amount over $500.00;
COUNT EIGHT: FELONY THEFT, violating Louisiana Revised Statute 14:67, in that
From January 1996 through December 1997, Robert "Bob" Odom, Jr., a person elected to public office, Commissioner of Agriculture and Forestry, misappropriated through fraudulent conduct, practices, or representations, by using Department of Agriculture and Forestry assets and personnel in the construction of his son's house and daughter's house, the money of the citizens of the State of Louisiana, with the intent to deprive them permanently of their money in an amount over $500.00;
COUNT ELEVEN: FELONY THEFT, violating Louisiana Revised Statute 14:67, in that
From 1997 continuing through August 2001, Robert "Bob" Odom, Jr., a person *210 elected to public office, Commissioner of Agriculture and Forestry, misappropriated the value of pine seedlings and site prep work and other things of value on his property performed by Department of Agriculture and Forestry employees through fraudulent conduct, practices, or representations, the money of the citizens of the State of Louisiana, with the intent to deprive them permanently of their money in an amount over $500.00;
The pertinent part of the bill of particulars related to Count 6 alleges that defendant misappropriated state funds and conspired to give Department employees pay increases, promotions, and leave time in exchange for their work on defendant's church and his son's house. The state further alleges that defendant conspired to pay higher salaries to employees who worked on his campaign. Further allegations are that defendant hired the state veterinarian to write college papers for defendant's son during the employee's regular working hours. As part of the conspiracy, the state also alleged in subsection IV that defendant used Department employees during work hours and Department equipment for his personal projects at his church, hunting camp, farm, and children's houses.
As to Count 7, the state alleges in the bill of particulars that defendant misappropriated state funds by the personal use of the Department airplane and the airplane pilot, a Department employee. The bill of particulars related to Count 8 alleges defendant's use of Department employees, equipment, and assets for work on his children's houses. This portion of the bill of particulars references the allegations under Count 6 pertaining to the use of Department employees. The Count 11 bill of particulars alleges that defendant used Department employees and equipment to complete site prep work and plant pine tree seedlings on his personal property. Additional allegations pertain to defendant's overdue payments on Department invoices for the pine seedlings.
The trial judge granted the motion to quash "to the extent that the allegations in 6, 7, 8, and 11 are based upon [the theft of] employee services."[8] Specifically, the judge stated that he quashed any reference in Count 7 to the theft of the services of the Department's airplane pilot. As to Count 8, the trial court also granted the motion to quash as to the allegations of the "use of personnel." As to Count 11, the trial court quashed the portion addressing the use of employees' labor but did not quash the allegations regarding the use of equipment.[9]
Herein, the trial court reasoned that under State v. Gisclair, 382 So.2d 914 (La. 1980), a person could not be prosecuted for theft of employee services. In Gisclair, the St. Charles Parish assessor used the *211 labor of several employees of the parish assessor's office to renovate his camp. This work was performed during regular working hours and the only pay that the employees received was their salaries from the state. Defendant was charged with theft and one count of public payroll fraud. The trial court found defendant was not guilty on these charges. Instead, the court found he was guilty of unauthorized use of movables (the services of state employees), a responsive verdict to theft.
In Gisclair, the Supreme Court referred to the broad definitions of "anything of value" and "services" and noted that whether services can be the object of theft does not end with that inquiry. The court stated:
The indictment charges that the services belonged to the parish and the state. The parish and the state cannot own the services of their employees. It has been held that ownership of services is not conveyed by a contract with the party to whom they are rendered because the knowledge or skill which a man possesses is not subject to ownership. Gonsalves v. Hodgson, 38 Cal.2d 91, 237 P.2d 656 (1951). Human effort and work are not the subject of ownership. If anyone owns them it is the employees themselves, and in this case there is no charge that the services were stolen from the employees. (Emphasis added. Footnote omitted.)
State v. Gisclair, 382 So.2d at 916.
The Gisclair court further noted that "many modern statutes make it theft to steal labor or services or the use of property" and that no such statute existed in Louisiana. Thus, the court concluded that a person could not be convicted of the theft of services of employees under the theft statute.
In the instant case, the state makes several arguments as to why Gisclair is not controlling in this case. The first is that Gisclair is distinguishable from the instant case; in Gisclair there had been a trial and a finding of fact that the employees made up the time spent on Gisclair's camp, and, thus, the state was not deprived of funds. Herein, the state argues it is prepared to prove at trial that it suffered a loss and misappropriation of state funds when the value of the employees' time was not returned to the state. The state also argues that since Gisclair has been cited only twice since rendered, it is a "relic" that should be overturned.
Defendant counters that Gisclair is still valid law and is applicable to the circumstances herein. Defendant argues that in the twenty years after Gisclair was rendered, the legislature has not chosen to amend the theft statute or enact a new statute, which would specifically provide for the theft of services.
We believe that the holding of Gisclair is controlling in the instant case. While the Gisclair court agreed with the lower court's analysis that the state suffered no deprivation because the employees' services, used during traditional working hours, were returned to the state when the employees worked during other hours of the day and night, it explained that the inquiry must go further. The court found that although the indictment charged that the employee services belonged to the parish and state, the parish and state did not own the services of its employees. Thus, under the reasoning of Gisclair, because the employee services do not belong to or are not owned by the state, there can be no theft from the state when defendant uses the services of Department employees, even during working hours, for his personal benefit. There may be some other offense or offenses for which defendant may be charged related to the allegations *212 of the indictment and bill of particulars, but theft is not the proper charge.
We do not agree with the state's argument that Gisclair is a "relic" and should be overturned. Basic tenets of law do not provide that case law is incorrect or is not authority merely because the opinion was rendered some time ago. Because our Supreme Court has provided no different interpretation of "anything of value" since Gisclair was decided, we are bound by its holding. Unless and until the Supreme Court interprets "anything of value" more broadly to encompass services, we must follow the Gisclair decision.
The state further asserts that Gisclair was legislatively overruled by the enactment of La. R.S. 42:1116 and 42:1461, which clarified public officials' responsibilities. The state argues that these statutes are controlling as the last legislative expression on the issue.
Defendant disagrees that the legislature intended to overrule Gisclair by enacting La. R.S. 42:1461, arguing that if it had, the legislature would have amended the theft statute. He further contends that 42:1461 does not provide for the crime of theft of services. He argues rather that it creates only a civil remedy and that the terms "funds, property, or other things of value" are not broader than the definition of anything of value in La. R.S. 14:67, the theft statute.
Louisiana Revised Statutes 42:1461, which was enacted by Acts 1982, No. 786, § 1, after Gisclair was rendered, specifically delineates the duty of public officials and employees with regard to public property. The statute provides for the personal obligation of public officials and employees "not to misappropriate, misapply, convert, misuse, or otherwise wrongfully take any funds, property, or other thing of value belonging to or under the custody or control of the public entity in which they hold office or are employed." Furthermore, the statute provides for a right of action in favor of the public entity for recovery of any funds, property or other things of value and for damages resulting from the breach of the personal obligation.
Louisiana Revised Statutes 42:1116 was enacted by Acts 1979, No. 443 and became effective on April 1, 1980, six days prior to the date of the opinion in Gisclair. The statute is in Chapter 15 of Title 42 which merely provides a code of governmental ethics. This statute was amended and reenacted by Acts 1997, No. 338 to broaden the statute. Under the current law, subsections (A) and (B) provide that no public servant shall use the authority of his office or position to compel or coerce another person to provide the public servant or other person with anything of economic value or to engage in political activity.
We conclude that Gisclair has not been legislatively overruled by the enactment of La. R.S. 42:1461 and 42:1116. The legislature certainly could not have enacted 42:1116 in response to Gisclair; that statute was enacted prior to the opinion in Gisclair. La. R.S. 42:1461 sets forth the personal obligation of public officials and employees with regard to public property and provides for the recovery of any funds, property, or other things of value and for damages which result from the breach of that personal obligation. This statute is not penal in nature and does not create an offense for which defendant may be prosecuted. Nor does it amend the theft statute under which defendant has been charged in Counts 6, 7, 8, and 11.
Thus, the state's assignment of error number two lacks merit.

Decree
Accordingly, for these reasons, we affirm the November 8, 2002 ruling granting *213 the defendant's motions to quash portions of Counts 1, 6, 7, 8 and 11.
NOVEMBER 8, 2002 RULING GRANTING DEFENDANT'S MOTIONS TO QUASH PORTIONS OF COUNTS 1, 6, 7, 8, AND 11 AFFIRMED.
NOTES
[1] The rulings on Counts 19 and 20 were not appealed.
[2] This appeal concerns only the trial court's ruling on November 8, 2002. The trial court also issued rulings granting the motions to quash on December 5, 2002 and December 12, 2002. The state appeals those rulings in State v. Odom, 02-2698 (La.App. 1st Cir.6/27/03), 861 So.2d 187, also decided this date. The district court denied defendant's motion to quash counts 1, 2, 6, 7, 8, and 11 based upon improper venue. Defendant seeks supervisory review of that ruling in a writ application in State v. Odom, 02-2701 (La.App. 1st Cir.6/27/03), 861 So.2d 195 also decided this date.
[3] The minutes refer to Count 17, but that count was previously dismissed by the state. The transcript of November 8, 2002, shows that the ruling pertained to Count 18. In the event of a discrepancy between the transcript and the minutes, the transcript prevails. State v. Lynch, 94-0543, p. 20 (La.App. 1st Cir.5/5/95), 655 So.2d 470, 481, writ denied, 95-1441 (La.11/13/95), 662 So.2d 466.
[4] The rulings pertaining to Counts 18, 19, and 20 were not appealed.
[5] On December 2, 2002, the trial court, ex proprio motu, continued the trial until December 4, 2002.
[6] These rulings were appealed by the state and are addressed in State v. Odom, 02-2698 (La.App. 1st Cir.6/27/03), 861 So.2d 187, also decided this date.
[7] Under La. R.S. 14:26(c) and 14:118(c), this offense is punishable by a fine of not more than $500.00, imprisonment with or without hard labor for not more than two and one half years or both.
[8] The trial judge also granted the motion as to allegations of employee services in Counts 2 and 3. The state has not appealed that portion of the judge's ruling.
[9] The judge further ordered that if the state intends to assert any other crime in Count 11 "involving equipment," an amendment to the bill of particulars was to be made by 4:30 p.m. on that day; otherwise, the entire count was to be quashed. The record does not establish that this amendment was ever made or that the entire count was ever quashed.

In a ruling on December 20, 2002, the trial court quashed part IV of the bill of particulars as to Count 6. The court also quashed Counts 7 and 8 in their entirety and the bill of particulars as to those counts, and all portions of Count 11 and the bill of particulars, "except allegations pertaining to pine seedlings." These rulings pertain to the remaining portions of the counts related to the use of Department equipment and assets and have been appealed by the state in State v. Odom, 02-2698 (La.App. 1st Cir.6/27/03), 861 So.2d 187, also decided this date.